USDC SCAN INDEX SHEET










RYC    11/16/05    9:48

3:03-CV-01146    SAN DIEGO UNIFIED V. TDY INDUSTRIES INC

*91*

*P/A.*

ORIGINAL

FILED
05 NOV 10 AM 11: 29
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

WARD L. BENSHOOF (State Bar No. 054987)
PETER A. NYQUIST (State Bar No. 180953)
KYLE A. OSTERGARD (State Bar No. 178129)
ALAN D. HEARTY (State Bar No. 233872)
**WESTON BENSHOOF ROCHEFORT RUBALCAVA & MacCUISH LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

BRETON K. LOBNER (State Bar No. 48215)
AMY S. GONZALEZ (State Bar No. 181745)
**SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY**
3225 North Harbor Drive
San Diego, California 92101
Telephone: (619) 400-2400
Facsimile: (619) 400-2428

Attorneys for Third-Party Defendant, Counterclaimant and Cross-Claimant
SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

KEVIN T. HAROFF (State Bar No. 123126)
**SONNENSCHEIN NATH & ROSENTHAL LLP**
685 Market Street, 6th Floor
San Francisco, California 94105-4212
Telephone: (415) 882-5000

Attorneys for Plaintiff San Diego Unified Port District

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>TDY INDUSTRIES, INC.; RYAN AERONAUTICAL COMPANY; TELEDYNE RYAN COMPANY; TELEDYNE RYAN AERONAUTICAL COMPANY; TELEDYNE INDUSTRIES, INC.; ALLEGHENY TELEDYNE, INC.; ALLEGHENY TECHNOLOGIES, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 03 CV 1146-B (POR)<br><br>SAN DIEGO UNIFIED PORT DISTRICT AND SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF MOTION TO COMPEL RULE 30(b)(6) DEPOSITION OF DEFENDANTS<br><br>Date: November 17, 2005<br>Time: 2:00 p.m. |
| AND RELATED ACTIONS. | |

719499.1

03 CV 1146 B (POR)

## I. INTRODUCTION.

San Diego Unified Port District (the "Port") and San Diego County Regional Airport Authority (the "Airport Authority") are unfortunately required to bring yet another discovery dispute before this Court because of Defendants TDY Industries, Inc., Ryan Aeronautical Company; Teledyne Ryan Aeronautical Company; Teledyne Industries, Inc.; Allegheny Teledyne, Inc.; and Allegheny Technologies, Inc.'s (collectively hereafter "Defendants")[1] failure to produce a properly educated and prepared 30(b)(6) witness for a deposition on August 23-24, 2005, in Pittsburgh, Pennsylvania, and refusal of the Port and Airport Authority's requests to re-produce a properly prepared witness. Even more disconcerting, this is not simply a case of "failure to prepare". Rather, the record clearly establishes Defendants and their counsel deliberately shielded their 30(b)(6) witness from information relevant to the 30(b)(6) topics (e.g., Defendants' readily accessible historical documents and former employees with percipient knowledge), so the witness could and would repeatedly respond, "I don't know."

The moving parties hereby request the Court order Defendants to produce a thoroughly educated and properly prepared witness as required by Rule 30(b)(6) for a deposition in San Diego on the topics identified and discussed below, and compensate both the Airport Authority and the Port for the expense they were put to in traveling to Pittsburgh for the deposition. Furthermore, in the event that Defendants again fail to satisfy their Rule 30(b)(6) duties by producing a designee who has not been properly educated with all information reasonably available to Defendants on the 30(b)(6) topics, the moving parties request the Court's order preclude Defendants' from providing testimony or evidence at trial that seeks to supplement or contradict the 30(b)(6) testimony.

## II. BACKGROUND INFORMATION.

As this Court is aware, this environmental litigation arises out of the Teledyne

---

[1] The only defendant not a party to this motion is Teledyne Ryan Company. According to Defendants' Response to San Diego Unified Port District's Interrogatory No. 1 (Accompanying Ostergard Declaration, Ex. 1), Teledyne Ryan Company is not affiliated with Defendants (i.e., is not a related entity) or has never existed, notwithstanding it has appeared in this action.

1

719499.1

Ryan Aeronautical Facility (the "Site"). The Ryan Aeronautical Co., the original lessor, began operating at the Site in the late 1930's. The other Defendants are The Ryan Aeronautical Co.'s successors in interest through various mergers and acquisitions. Defendants manufactured unmanned air vehicles, aerial target and drone systems, remote control technology, simulation systems and associated aircraft structure from the 1930's until approximately 1999. (Defendants' Response to Interrogatory No. 3, Ostergard Decl., Ex. 1.)

### 1. June 23, 2005: The Original 30(b)(6) Notice of Deposition.

Given the complicated corporate history and lengthy historical operations at the Site, the Airport Authority noticed TDY Industries, Inc.'s deposition pursuant to Rule 30(b)(6) to gain an understanding of the history of the Site, Defendants' operations thereon, and potential causes of the present contamination. Accordingly, on June 23, 2005, the Airport Authority noticed a Rule 30(b)(6) deposition of Defendant TDY Industries, Inc. regarding a variety of specified topics, including:

- the release of chemicals and hazardous waste generation and management by the various owners and operators of the Site (i.e., Defendants);

- releases by any other person at or onto the Site, Convair Lagoon, and the "Other Surrounding Areas" which TDY Industries, Inc. claims the Airport Authority and the Port may be responsible for contaminating; and

- the "damages" claimed by TDY Industries, Inc. and any reimbursement sought by Defendants for those remediation costs from any source, including insurers and the federal government.

To give ample time for preparation of the witnesses, the deposition was set to take place over six weeks later, August 10, 2005, in Pittsburgh, Pennsylvania.[2]

### 2. Defendants Collectively Produced a Single Witness to Testify on All Topics Then Deliberately Shielded Him From Acquiring Relevant Knowledge.

Shortly after the deposition of TDY Industries, Inc. was originally noticed, and

---

[2] Defendants accordingly had more time than is allowed for answering interrogatories to prepare. This time was extended such that Defendants had two months to prepare.

so there would be no ambiguity that the 30(b)(6) topics had to be addressed by the person or persons "most knowledgable" for *each* of TDY's predecessor entities, the Airport Authority issued a request that TDY's designee testify on behalf of each of the other Defendants. The deposition dates were further extended, allowing more preparation time – eventually being set for August 23rd and 24th. Defendants then collectively designated a single 30(b)(6) witness – Edgard Bertaut, an individual employed by Allegheny Technologies since 2000 as a senior environmental manager – for all topics. Mr. Bertaut previously worked for Teledyne Rodney Metals for approximately two years before moving to the "Teledyne" corporate office in Pittsburgh as an Environmental Manager. (Bertaut Transcript ["Bertaut Tr."], pp. 19-20, lns. 5-4.) Although the 30(b)(6) topics sought testimony on the operations of the Site since its inception in the late 1930's, Mr. Bertaut did not have any familiarity at all with the Site until sometime in the 1990's and had no responsibilities associated with it until 2000 – after the historical operations and conduct at issued had ceased. (Bertaut Tr., pp. 21-22, lns. 5-4; Defendants' Response to Interrogatory No. 3, Ostergard Decl. Ex. 1.)

Beyond that, when Mr. Bertaut's deposition commenced, it became apparent that Defendants had not only produced a witness that had almost no knowledge of the deposition topics, they had taken steps to assure that he would acquire no knowledge before the deposition. First, Defendants had Mr. Bertaut talk to no one but their counsel to prepare for the deposition. (Bertaut Tr., p. 10, lns. 5-7.) For example, Mr. Bertaut testified that even though he was familiar with several former environmental managers at the Site when it was in operation, he attempted to contact none of them to prepare for his deposition. (See e.g., Bertaut Tr., pp. 122-123, lns. 22-2; p. 203, lns. 16-24; lns., p. 142, lns. 10-14.) Second, TDY's counsel assured that Mr. Bertaut would not be prepared on the deposition topics by limiting his pre-deposition document review to his deposition transcript in the prior state court litigation with the Port and only **eight** carefully selected documents: two reports by TDY environmental consultants; two Cleanup and Abatement Orders issued by the Regional Water Quality Control Board; two documents reflecting TDY document retention/destruction policies; a single page prepared by counsel outlining the corporate

3

719499.1

history of Ryan Aeronautical; and a single page prepared by counsel purportedly summarizing "invoices" that supported TDY's damage claim. (Bertaut Tr., p. 10, l.15 to p.11, l. 11.)

In a case where Defendants have repeatedly touted their production of 72 boxes produced during the Rule 26 disclosures – they assured that their 30(b)(6) witness reviewed virtually none of them! They also assured their designee talked to *none* of the 48 (non-Port or Airport Authority) individuals which they identified in their Rule 26 disclosures as having percipient knowledge of the underlying facts. Defendants have made a mockery of the Rule 30(b)(6) process.

### 3. The Prejudice to the Airport Authority And The Port: Being "Ambushed" at Trial.

The failure of Defendants to comply with their Rule 30(b)(6) obligations presents a case of clear prejudice to the Airport Authority and the Port. Not only have these parties been denied their right to be informed on the knowledge in Defendants possession or reasonably available to them through the testimony of a properly prepared 30(b)(6) witness, but as a result of Defendants' failures, they also face a very real risk of being ambushed at trial by testimony to facts that should have come out in the 30(b)(6) deposition. We know this now as a result of the "meet and confer" process which the Airport Authority went through to try to resolve this dispute with Defendants. In the course of this process, the Airport Authority suggested orally and in writing the parties' dispute could be substantially narrowed, if not entirely resolved, if Defendants would agree that it would not produce witnesses at trial to testify to facts that its 30(b)(6) witness claimed no knowledge of beyond the two consultants' reports. (Benshoof Decl., Ex. 7.) Defendants refused to agree that they would not seek to either supplement or contradict such facts, nor contradict them at trial, by testimony from any of the several percipient witnesses TDY had knowledge of (as identified in TDY's Rule 26 disclosures of many months ago), perhaps signaling their true motive behind failing to adequately prepare Mr. Bertaut in the first place: an intent to sandbag the Airport Authority and the Port by presenting testimony to facts at trial that should have been

disclosed during Mr. Bertaut's deposition. Irrespective of the motive, it is now plainly revealed that Defendants fully intend to take advantage of depriving the Airport and the Port of the informed 30(b)(6) testimony they were entitled to by presenting at trial testimony from witnesses – particularly its former employees – whose knowledge should have been part of Mr. Bertaut's preparation. (Ostergard Decl., Ex. 5.)

The Court can prevent the self-evident prejudice by ordering Defendants to produce a fully prepared witness and, should they fail to do so again, precluding them from introducing any other evidence as to the topics noticed for 30(b)(6) testimony at trial.

### III. THE DEPOSITION TOPICS AT ISSUE IN THIS DISCOVERY DISPUTE.

Among other things, the following subjects (the "Deposition Topics") are at issue in this discovery dispute:

1. The RESPONSE, or lack thereof, by any OWNER or OPERATOR to any RELEASE of CHEMICALS, HAZARDOUS WASTE, or HAZARDOUS SUBSTANCES at or on the TRA FACILITY.[3]

2. The RESPONSE, or lack thereof, by any OWNER or OPERATOR of the TRA FACILITY to any RELEASE of CHEMICALS, HAZARDOUS WASTE, or HAZARDOUS SUBSTANCES at, on, or in CONVAIR LAGOON and the SURROUNDING AREAS.

3. The DISPOSAL of HAZARDOUS WASTE by any OWNER or OPERATOR of the TRA FACILITY.

4. The HAZARDOUS WASTE GENERATION by any OWNER or OPERATOR of the TRA FACILITY.

5. The HAZARDOUS WASTE MANAGEMENT by any OWNER or OPERATOR of the TRA FACILITY.

6. The RELEASE by any PERSON of any CHEMICALS, HAZARDOUS SUBSTANCES, or HAZARDOUS WASTE at, on, onto, or in CONVAIR LAGOON and the SURROUNDING AREAS.

---

[3] Capitalized terms are defined in the Notices of Deposition attached as Exhibit 4 to the Ostergard Declaration. The numbering of the topics corresponds to the number utilized in the Notices of Deposition. The numbers, accordingly, skip numbers for topics not at issue in this motion.

5

7.  The facts supporting TDY's contention in Paragraph 10 of the THIRD-PARTY COMPLAINT that it has performed substantially all the required investigation and remediation of the SITE.

8.  The computation of the damages TDY seeks to recover in this action.

9.  The costs, including RESPONSE costs, TDY incurred or seeks to recover in this action for investigating, remediating, or addressing the presence of CHEMICALS, HAZARDOUS SUBSTANCES, HAZARDOUS WASTE, contamination, or pollution at, on, or in the SITE.

10. The costs, including RESPONSE costs, Teledyne Industries, Inc. incurred for investigating, remediating, or addressing the presence of CHEMICALS, HAZARDOUS SUBSTANCES, HAZARDOUS WASTE, contamination, or pollution at, on, or in the SITE.

16. All requests by any OWNER or OPERATOR of the SITE for reimbursement from any source, including the United States Government, for RESPONSE costs RELATING TO the presence or RELEASE of CHEMICALS, HAZARDOUS SUBSTANCES, or HAZARDOUS WASTE at, on, or in the CONTAMINATED SITES.

17. All responses from any source, including the United States Government, to any request for reimbursement for RESPONSE costs by an OWNER or OPERATOR of the SITE RELATING TO the presence or RELEASE of CHEMICALS, HAZARDOUS SUBSTANCES, or HAZARDOUS WASTE at, on, or in the CONTAMINATED SITES.

18. The amount of reimbursement received by any OWNER or OPERATOR of the SITE from any source, including the United States Government, for RESPONSE costs RELATING TO the presence or RELEASE of CHEMICALS, HAZARDOUS SUBSTANCES, or HAZARDOUS WASTE at, on, or in the CONTAMINATED SITES.

## IV. DEFENDANTS WERE OBLIGATED TO PRODUCE A WITNESS PREPARED TO TESTIFY ON THE DEPOSITION TOPICS.

Rule 30(b)(6) requires more than the production of a percipient witness to testify to that witnesses' personal knowledge. Rule 30(b)(6) required Defendants to educate themselves on the Depositions Topics and provide testimony disclosing Defendants' positions and contentions relating to them. See, U.S. v. Taylor, 166 F.R.D. 356 (M.D. N.C. 1996); see also, Fed. Rule Civ. Proc., Rule 30, Advisory Committee Notes 1971

Amendments ("The organization is then obliged to designate natural persons to testify on its behalf" about the subject matters identified in the deposition notice); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2103. This obligation for a corporation to educate itself to allow for meaningful deposition testimony is **akin to a corporation's obligation to provide substantive interrogatory responses**. Fed. Rule Civ. Proc., Rule 30, Advisory Committee Notes 1970 Amendments.

The U.S. v. Taylor court discussed the duty set forth in Rule 30(b)(6) to present a designee to "testify as to **matters known or reasonably available to the organization**." Rule30(b)(6) (Emphasis added.) Similar to this case, the U.S. v. Taylor case involved a CERCLA action which involved events going back decades. U.S. v. Taylor, 166 F.R.D. at 358. Notwithstanding the events went far into the past, the court held:

> The corporation . . . must prepare [the witnesses] so that they may give **complete, knowledgeable** and binding **answers** on behalf the corporation. . . . [¶] Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. . . . [¶] Moreover, the designee must not only testify about facts **within the corporation's knowledge**, but also its subjective beliefs and opinions. The corporation must provide its interpretation of documents and events.

U.S. v. Taylor, 166 F.R.D. at 360-361 (internal citations and quotations omitted; emphasis added); see also, In re Vitamins Antitrust Litigation, 216 F.R.D. 168, (D.C. D.C. 2003) (corporation "obligated to produce one or more 30(b)(6) who were **thoroughly educated** about the noticed deposition topics with respect to any and all facts known to [corporation] or its counsel." [Emphasis added.]). This duty to prepare includes, if necessary, reviewing documents or contacting former employees or other sources. U.S. v. Taylor, 166 F.R.D at 361.

V. **DEFENDANTS FAILED TO PRODUCE A WITNESS THAT SATISFIES ITS DUTIES UNDER RULE 30(b)(6).**

As detailed above and by the numerous quotes from the transcript contained in the accompanying Joint Statement, Mr. Bertaut's testimony confirms Defendants made no

7

719499.1

serious effort at all to satisfy the duty to present a prepared witness and meaningful testimony on the Deposition Topics. This is established by the fact that:

- Mr. Bertaut only spoke to counsel about the deposition, did not talk to anyone else or even attempt to do so – all on a case with a factual history spanning several decades about which he has no personal knowledge. (Bertaut Tr., p. 10, lns. 5-7; p. 151, lns. 14-20.)

- With respect to the several topics addressed to historical conduct and operations and environmental conditions at issue (Deposition Topic Nos. 1-6), Mr. Bertaut essentially reviewed two reports. (Bertaut Tr., p. 10-11, lns. 2-3.) This notwithstanding the voluminous amount of documents – more than 70 boxes – produced by TDY, replete with historical documents spanning decades.

- With respect to the contention in TDY Industries, Inc.'s Third-Party Complaint that TDY has performed substantially all required remediation (Deposition Topic No. 7), Mr. Bertaut only reviewed a "preliminary plan" and did not even bother to review the Third-Party Complaint. (Bertaut Tr., p. 10-11, lns. 2-3; p. 53, lns. 4-7.) He could not speak to most of the facts regarding the remedial work TDY had performed (Deposition Topic Nos. 7-10) and could only testify to the amounts claimed as damages (Deposition Topic No. 8) based on a summary spreadsheet that was prepared by counsel – a spreadsheet which Mr. Bertaut testified was incomplete and unfinished. (See e.g., Bertaut Tr., p. 164, lns. 8-11; p. 164, lns. 12-23; pp. 164-165, lns. 24-3; p. 194, lns. 8-21; pp. 268-269, lns. 21-8; pp. 192-193, lines 19-1; Ex. 23.) He made no effort to review the invoices covering the work or even to confirm the amounts contained in the damages summary spreadsheet were accurate (Bertaut Tr., pp. 165-166, lns. 15-15; pp. 276-277, lns. 22-2); nor did he review the more complete spreadsheet which identified the total amount paid for all the remediation work. (Bertaut Tr., pp. 268-269, lns. 21-8.)

- Mr. Bertaut utterly failed to provide any substantive information on Deposition Topics Nos. 16-18 pertaining to reimbursements for remedial work. He had no knowledge about requests for reimbursement for remedial work, insurance polices, what costs were or were not claimed under insurance policies, whether the costs for remedial work for Convair Lagoon at issue herein was claimed in litigation against insurance companies, and admittedly made *no* effort whatsoever to determine whether the federal government had made any reimbursements even though this issue was specifically identified in Topic No. 18. (Bertaut Tr., p.184, lns. 16-21; pp. 187-188, lns. 24-4; pp. 189-190, lns. 19-6; p. 186 lns. 15-25.)

In sum, in a case with a factual history spanning decades, Mr. Bertaut read, for the most part, two environmental reports and a damages summary spreadsheet. He testified his knowledge was limited to those documents. He did not attempt to interview a single person. This establishes Mr. Bertaut was not properly prepared to provide meaningful testimony as Rule 30(b)(6) contemplates.

## VI. THE COURT SHOULD PREVENT DEFENDANTS' FRIN SANDBAGGING THE PORT AND AIRPORT AUTHORITY AND AWARD MONETARY SANCTIONS.

What is especially disturbing here is the deliberate attempt by Defendants and/or its counsel to limit the amount of information Mr. Bertaut would be exposed to. This all but guaranteed ignorance. The few documents Mr. Bertaut did review were all derived from consultations with counsel. (Bertaut Tr., p. 151, lns. 10-13.) A conscious decision was made to shield Mr. Bertaut from the thousands of documents produced under Rule 26.

Mr. Berka's October 11, 2005, e-mail in response to the Airport Authority's proposed stipulation during the meet and confer process to resolve the discovery dispute shines additional light on Defendants' "trial by sandbagging" strategy. In that e-mail, Defendants take the position they can make an evidentiary showing at trial to allow witnesses – including Mr. Bertaut himself – to supplement or even contradict his deposition 30(b)(6) testimony.[4] (Ostergard Declaration, Ex. 5.) Fortunately, courts interpret Rule 30(b)(6) to absolutely preclude such a strategy:

> This interpretation [of Rule 20(b)(6)] is necessary in order to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of discovery. . . .
>
> [A party] does not fulfill its obligation at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available, and then at trial

---

[4] The issue here is *not* what rights Defendants may have to provide evidence at trial on the Deposition Topics. The issue is whether Defendants can purposefully remain ignorant during discovery until trial – i.e., textbook "sand bagging."

9

719499.1

argue a different position. [Defendant] seems now to concede that it could not take such a position at the deposition and then use its own documents or personnel to so testify at trial. However it claims a right to deny knowledge or position now, but then at trial rely on the other documents and testimony of others or to at least present argument that the evidence presented by others does not reflect the state of facts as contended by those parties.

U.S. v. Taylor, 166 F.R.D. at 362.

The Airport Authority incurred costs totaling $1,219.07 for travel and room and board for Mr. Benshoof's travel to Pittsburgh for the deposition. (Benshoof Decl., Ex. 8.) The Port incurred $1,376.36. The moving parties request, accordingly, sanctions totaling $2595.43 ($1,219.07 + $1376.36).

## VII. CONCLUSION.

Once Mr. Bertaut's inability to provide testimony that complied with Rule 30(b)(6) became apparent, Defendants "had a duty to [immediately] substitute another person once the deficiency of its Rule 30(b)(6) designation became apparent during the course of the deposition." See, Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D. N.C. 1989). Based upon Defendants' failure to do so, the Port and Airport Authority request the Court issue an order requiring Defendants to produce a witness or witnesses in San Diego prepared to testify as Rule 30(b)(6) requires.

DATED: November 9, 2005  WARD L. BENSHOOF
WESTON, BENSHOOF, ROCHEFORT,
RUBALCAVA & MacCUISH LLP

_____
Ward L. Benshoof
Attorneys for Third-Party Defendant, Counterclaimant and Cross-Claimant SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

DATED: November 9, 2005  KEVIN T. HAROFF
SONNENSCHEIN NATH & ROSENTHAL LLP

_____
Kevin T. Haroff
Attorneys for Plaintiff San Diego Unified Port District

10

argue a different position. [Defendant] seems now to concede that it could not take such a position at the deposition and then use its own documents or personnel to so testify at trial. However it claims a right to deny knowledge or position now, but then at trial rely on the other documents and testimony of others or to at least present argument that the evidence presented by others does not reflect the state of facts as contended by those parties.

U.S. v. Taylor, 166 F.R.D. at 362.

The Airport Authority incurred costs totaling $1,219.07 for travel and room and board for Mr. Benshoof's travel to Pittsburgh for the deposition. (Benshoof Decl., Ex. 8.) The Port incurred $1,376.36. The moving parties request, accordingly, sanctions totaling $2595.43 ($1,219.07 + $1376.36).

VII. **CONCLUSION.**

Once Mr. Bertaut's inability to provide testimony that complied with Rule 30(b)(6) became apparent, Defendants "had a duty to [immediately] substitute another person once the deficiency of its Rule 30(b)(6) designation became apparent during the course of the deposition." See, Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D. N.C. 1989). Based upon Defendants' failure to do so, the Port and Airport Authority request the Court issue an order requiring Defendants to produce a witness or witnesses in San Diego prepared to testify as Rule 30(b)(6) requires.

DATED: November 9, 2005   WARD L. BENSHOOF
WESTON, BENSHOOF, ROCHEFORT,
RUBALCAVA & MacCUISH LLP

_____
Ward L. Benshoof
Attorneys for Third-Party Defendant, Counterclaimant and Cross-Claimant SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

DATED: November 9, 2005   KEVIN T. HAROFF
SONNENSCHEIN NATH & ROSENTHAL LLP

*Kevin T. Haroff*
_____
Kevin T. Haroff
Attorneys for Plaintiff San Diego Unified Port District

10

03 CV 1146 B (POR)

719499.1

# PROOF OF SERVICE

I, Laura Olagues, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is c/o Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On November 9, 2005, I served the document(s) described as SAN DIEGO UNIFIED PORT DISTRICT AND SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF MOTION TO COMPEL RULE 30(b)(6) DEPOSITION OF DEFENDANTS on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:

SEE ATTACHED OVERNIGHT DELIVERY LIST

☒ BY FEDERAL EXPRESS  ☐ UPS NEXT DAY AIR  ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS  ☐ UPS  ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of  ☒ FEDERAL EXPRESS  ☐ UPS  ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐ [State]  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]  I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2005, at Los Angeles, California.

*/s/ Laura Olagues*
Laura Olagues

719499.1

12

*San Diego Unified Port District v. TDY Industries, Inc. et al.*
United States District Court – Southern District of California
Case No.: 03 CV 1146-B (POR)

## OVERNIGHT DELIVERY LIST

| | |
|---|---|
| Kevin T. Haroff, Esq.<br>Sonnenschein Nath & Rosenthal LLP<br>685 Market Street, 6th Floor<br>San Francisco, CA 94105-4212 | Attorneys for Plaintiff<br>San Diego Unified Port District<br><br>(415) 882-5000<br>(415) 543-5472 Fax |
| Christopher Berka, Esq.<br>Susan Vastano Vaughan, Esq.<br>Bingham McCutchen LLP<br>1900 University Avenue<br>East Palo Alto, CA 94303-2233 | Attorneys for Defendant,<br>Counterclaimant and Third-Party Plaintiff<br>TDY Industries, Inc.<br><br>Attorneys for Defendants<br>Ryan Aeronautical Company; Teledyne Ryan Company; Teledyne Ryan Aeronautical Company; Teledyne Industries, Inc.; Allegheny Teledyne, Inc.; Allegheny Technologies, Incorporated erroneously sued as Allegheny Technologies, Inc.<br><br>(650) 849-4400<br>(650) 849-4800 Fax |

719499.1

13

# PROOF OF SERVICE

I, Laura Olagues, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is c/o Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On November 9, 2005, I served the document(s) described as SAN DIEGO UNIFIED PORT DISTRICT AND SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT OF MOTION TO COMPEL RULE 30(b)(6) DEPOSITION OF DEFENDANTS on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:

SEE ATTACHED U.S. MAIL DELIVERY LIST

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☐ BY FEDERAL EXPRESS   ☐ UPS NEXT DAY AIR   ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS   ☐ UPS   ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of   ☐ FEDERAL EXPRESS   ☐ UPS   ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston Benshoof Rochefort Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐ BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐ [State]   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]   I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2005, at Los Angeles, California.

*Laura Olagues*
Laura Olagues

14

719499.1

*San Diego Unified Port District v. TDY Industries, Inc. et al.*
United States District Court – Southern District of California
Case No.: 03 CV 1146-B (POR)

## SERVICE LIST

| | |
|---|---|
| Breton K. Lobner, Esq.<br>Amy S. Gonzalez, Esq.<br>San Diego County Regional Airport Authority<br>3225 North Harbor Drive<br>San Diego, CA 92101 | Attorneys for Third-Party Defendant<br>San Diego County Regional Airport Authority<br><br>(619) 400-2400<br>(619) 400-2428 Fax |
| Douglas M. Butz, Esq.<br>Paul J. Dechary, Esq.<br>Lee S. Kaminetz, Esq.<br>Butz Dunn Desantis & Bingham<br>101 West Broadway, Suite 1700<br>San Diego, CA 92101-8289 | Attorneys for Plaintiff<br>San Diego Unified Port District<br><br>(619) 233-4777<br>(619) 231-0341 Fax |
| Steven M. Siros, Esq.<br>Rebecca L. Raftery, Esq.<br>Jenner & Block LLP<br>One IBM Plaza<br>Chicago, IL 60611-7603 | Attorneys for Third-Party Defendant<br>General Dynamics Corporation<br><br>(312) 923-2717<br>(312) 840-7717 Fax |
| J Drew Page, Esq.<br>Latham & Watkins, LLP<br>600 W. Broadway, Suite 1800<br>San Diego, CA 92101-3375 | Attorneys for Third-Party Defendant<br>General Dynamics Corporation<br><br>(619) 236-1234<br>(619) 696-7419 Fax |

719499.1