KEVIN T. HAROFF (State Bar No. 123126)
MATTHEW G. ADAMS (State Bar No. 229021)
**SONNENSCHEIN NATH & ROSENTHAL LLP**
525 Market Street, 26th Floor
San Francisco, CA 94105-4212
Telephone:  (415) 882-5000
Facsimile:   (415) 882-0300

DOUGLAS M. BUTZ (State Bar No. 060722)
JOCELYN D. HANNAH (State Bar No. 224666)
**BUTZ DUNN DESANTIS & BINGHAM**
A PROFESSIONAL CORPORATION
101 West Broadway, Suite 1700
San Diego, CA 92101-8289
Telephone:  (619) 233-4777
Facsimile:   (619) 231-0341

Attorneys for Plaintiff and Counter Claim Defendant
SAN DIEGO UNIFIED PORT DISTRICT

(Additional Parties and Counsel Listed in Signature Block)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>Plaintiff,<br><br>vs.<br><br>TDY INDUSTRIES, INC.; RYAN AERONAUTICAL COMPANY; TELEDYNE RYAN COMPANY; TELEDYNE RYAN AERONAUTICAL COMPANY; TELEDYNE INDUSTRIES, INC.; ALLEGHENY TELEDYNE, INC.; ALLEGHENY TECHNOLOGIES, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED ACTIONS | Case No. 03 CV 1146-B (POR)<br>[Complaint Filed: June 9, 2003]<br><br>NOTICE OF MOTION AND JOINT MOTION FOR APPROVAL OF SETTLEMENT, RETENTION OF JURISDICTION, AND JUDICIAL DETERMINATION OF GOOD FAITH; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>(Decl. of Kevin T. Haroff and Proposed Order Filed Concurrently Herewith)<br><br>Honorable Rudi M. Brewester<br><br>Date: April 17, 2007<br>Time: 10:30 AM<br>Courtroom: 2<br><br>Trial Date:            May 1, 2007<br>Discovery Cut-Off: January 12, 2007<br>Motion Cut-Off     February 20, 2007 |

Case No. 03 CV 1146-B (POR)   NOTICE OF MOTION AND MOT. FOR APPROVAL OF SETTLEMENT; MEM. OF POINTS AND AUTHORITIES

1   TO: ALL PARTIES, AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD
2   HEREIN:

3   PLEASE TAKE NOTICE that on April 17, 2007, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-entitled Court, located at 940 Front Street, San Diego, California 92101, Plaintiff and Counter Claim Defendant San Diego Unified Port District ("Port District"); Third-Party Defendant Counterclaimant and Cross-Claimant San Diego County Regional Airport Authority ("Airport Authority"); Defendants, Counterclaimants, and Third-Party Defendants TDY Industries, Inc., Ryan Aeronautical Company, Teledyne Ryan Company, Teledyne Ryan Aeronautical Company, Teledyne Industries, Inc., Allegheny Teledyne, Inc., TDY Holdings, LLC, and Allegheny Technologies Incorporated, incorrectly sued as Allegheny Technologies Inc. (collectively "Defendants"); and General Dynamics Corporation ("General Dynamics") will and hereby do jointly move:

(a) pursuant to Federal Rule of Civil Procedure 41 and the Court's inherent authority, for an order approving the settlement agreement ("Settlement Agreement") between the Port, the Airport Authority and Defendants and retaining jurisdiction for purposes of enforcing the terms of that Agreement; and

(b) pursuant to federal common law and California Code of Civil Procedure §877.6, for a judicial certification that the Settlement Agreement and the Separate Agreement are being made in good faith and without prejudice to the rights or interests of any third party (i.e. any party that is not a party to the Settlement Agreement or the Separate Agreement).

This motion is made on the grounds that the terms of the Settlement Agreement and the Separate Settlement are both the result of arms' length negotiation between the parties and are fair and reasonable. A good faith determination, with its concomitant protections against present and future claims for contribution and indemnity by parties who are not parties to the Settlement Agreement or the Separate Settlement, will further the goals of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Resource Conservation and Recovery Act ("RCRA"), and other underlying law.

- 1 -

Case No. 03 CV 1146-B (POR)     NOTICE OF MOTION AND MOT. FOR APPROVAL
OF SETTLEMENT; MEM. OF POINTS AND AUTHORITIES

The Court's continuing jurisdiction over the Settlement Agreement is necessary to ensure enforcement of the terms of the Settlement Agreement until certain actions required to be undertaken by the parties are completed. All of the parties to the Settlement Agreement have stipulated to the Court's granting this relief, and it is necessary for the Settlement Agreement to be effective and for this case to be fully resolved without the need for the currently scheduled May 1, 2007 trial.

The Joint Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Kevin T. Haroff, the accompanying [Proposed] Order, and all other papers filed in this action.

DATED: March 28, 2007

KEVIN T. HAROFF
MATTHEW G. ADAMS
**SONNENSCHEIN NATH & ROSENTHAL LLP**

_/s/ Kevin T. Haroff_
Kevin T. Haroff
Attorneys for Plaintiff
SAN DIEGO UNIFIED PORT DISTRICT

DATED: March 28, 2007

WARD L. BENSHOOF
MICHAEL J. HARTLEY
KYLE A. OSTERGARD
**WESTON, BENSHOOF, ROCHEFORT, RUBALCAVA & MacCUISH LLP**

_/s/ Ward Benshoof / KTH_
Ward L. Benshoof
Attorneys for Third-Party Defendant, Counterclaimant and Cross-Claimant SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

DATED: March 28, 2007

J. DREW PAGE
**LATHAM & WATKINS LLP**

_/s/ Drew Page / KTH_
J. Drew Page
Attorneys for Third-Party Defendant
GENERAL DYNAMICS CORPORATION

- 2 -

Case No. 03 CV 1146-B (POR) — NOTICE OF MOTION AND MOT. FOR APPROVAL OF SETTLEMENT; MEM. OF POINTS AND AUTHORITIES

1
2
3  DATED: March 28, 2007    CHRISTOPHER BERKA
4                          WARREN GEORGE
                           MARILEE J. ALLAN
5                          HOLLY PEARSON
                           **BINGHAM MCCUTCHEN LLP**
6
                           *CHRIS BERKA / ISTH*
                           _____
7                          Christopher Berka
                           Attorneys for Defendant, Counterclaimant
8                          and Third-Party Plaintiff TDY INDUSTRIES, INC.
                           and Defendants RYAN AERONAUTICAL COMPANY;
9                          TELEDYNE RYAN COMPANY; TELEDYNE RYAN
                           AERONAUTICAL COMPANY; TELEDYNE
10                         INDUSTRIES, INC.; ALLEGHENY TELEDYNE, INC.;
                           ALLEGHENY TECHNOLOGIES, INCORPORATED
11                         ERRONEOUSLY SUED AS ALLEGHENY
                           TECHNOLOGIES, INC.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

After enormous effort by the parties, mediator Timothy Gallagher, and Magistrate Judge Porter, the parties finally have agreed to settle this case in its entirety. The specifics are set forth in two separate agreements, one between the Port District, the Airport Authority, and Defendants (the "Settlement Agreement"), and one between General Dynamic and Defendants (the "Separate Settlement").

For the reasons set forth below and already well-known to the Court, the parties respectfully request that the Court approve the Settlement Agreement and the Separate Settlement as being entered in good faith. The Port District, the Airport Authority, and Defendants also request respectfully that the Court retain continuing jurisdiction over this action to the extent necessary to enforce the terms of the Settlement Agreement.

### II.  STATEMENT OF FACTS

#### A.  Procedural Setting

##### 1.  The Litigation

The Port District, acting as trustee for the benefit of the People of California, is the record owner of approximately 44 acres of property located at 2701 N. Harbor Drive, San Diego, California (the "Site"). Defendants are former tenants (or have corporate relationships with former tenants) that conducted certain aeronautical manufacturing operations at the Site. The Airport Authority operates the San Diego International Airport ("Airport Authority"), which is also located on Harbor Drive and is adjacent to the Site. The Authority currently holds a long-term lease for the Site. General Dynamics previously conducted manufacturing operations at other parcels adjacent to or in the vicinity of the Site and the Airport.

The Port District, the Airport Authority, General Dynamics, and Defendants are all parties to the action currently pending before this Court. The action concerns various disputes that have arisen over the responsibility for and remediation of certain chemical contamination located at and around the Site, with claims being brought by one or more of the parties under, *inter alia,* CERCLA, RCRA and state common law. The Port District, the Airport Authority,

and General Dynamics allege that the Defendants are entirely responsible for the contamination, all costs incurred in responding to the contamination, and other damages. The Airport Authority further alleges that the Defendants are liable for certain monetary damages arising from the Authority's inability to use the Site. Defendants deny these allegations and contend that the Port District, the Airport Authority, and General Dynamics are at least partly responsible for costs and damages Defendants incurred in responding to contamination at the Site, at a part of San Diego Bay known as Convair Lagoon ("Convair Lagoon"), and in the regional storm water conveyance system.

The case currently is set for trial on May 1, 2007. The parties have engaged in substantial discovery, including exchanging tens of thousands of pages of documents, propounding and responding to other written discovery, taking numerous depositions (of percipients and experts), and exchanging expert reports. Motions for summary adjudication also have been filed and ruled on by the Court. The parties may yet have to finalize various pre-trial exchanges and filings required under the Federal Rules and the local rules of this Court, although these requirements currently are stayed pending the Court's consideration of the present Motion.

2.  **Regulatory Proceedings**

Defendants TDY Industries, Inc. and Teledyne Ryan Aeronautical Company (and a third entity, TDY Holdings, LLC) (collectively, "TDY") are named as the responsible parties for complying with Cleanup and Abatement Order No. R9-204-0258 (the "CAO"), originally issued on October 4, 2004 and amended on May 17, 2005, with subsequent addenda adopted on July 22, 2005 and November 8, 2006, by the California Regional Water Quality Control Board (the "Regional Board"). The CAO requires TDY to undertake various actions in response to discharges of waste at and from the Site.

Among other things, the CAO requires TDY to complete a Site investigation and characterization study, to undertake interim remedial actions at the Site, to complete a Remedial Investigation and Feasibility Study ("RI/FS"), and to prepare and implement a Remedial Action Plan ("RAP") for the Site. To date, TDY has taken action to comply with some, but not all of, the requirements of the CAO.

## B. The Settlements

This case originally was scheduled for trial in mid-2006, but was stayed by the Court in January 2006 so that the parties could pursue substantial settlement discussions. Those discussions were facilitated by Timothy Gallagher, a private professional mediator with substantial environmental expertise. They began with an initial mediation session and extended over the ensuing year with multiple follow-up sessions, both in-person and by telephone. The litigation stay was lifted in late 2006 and the parties proceeded with expert discovery. Nevertheless, the parties continued their efforts to reach a mediated settlement of the case.

More recently, settlement negotiations have been facilitated substantially by the involvement of Magistrate Judge Porter, who helped the parties overcome the final roadblocks to settlement and reach final agreement in a manner that resolves the case in its entirety. After several in-person sessions and additional conference calls with Judge Porter, the parties have resolved all outstanding impediments to settlement. The overall settlement is actually two agreements, one between the Port District, the Airport Authority and Defendants, and one between General Dynamics and Defendants. The parties to both agreements are requesting by this joint motion that each agreement should be approved as being entered in good faith.

The Settlement Agreement between the Port District, the Airport Authority, and Defendants accomplishes several goals. First, it effectuates a compromise and settlement of the Port District's, the Airport Authority's, and Defendants' claims, cross-claims and counter-claims. Second, it provides for the demolition and removal of buildings, pavement, and other structures at the Site (the "Demolition Project").[1] Third, it provides a mechanism for assuring prompt remediation of the Site in compliance with the CAO. And Fourth it provides the parties with an expedited dispute resolution mechanism for resolving certain disputes that may arise between and among the parties in the future.

The Separate Settlement agreement between General Dynamics and the Defendants effectuates a compromise and settlement of all claims asserted by and between General Dynamics and the Defendants, both as part of the present litigation and in additional proceedings initiated by General Dynamics in this Court. The Separate Settlement also calls for the dismissal of pending claims and actions between General Dynamics and the Defendants.

The Settlement Agreement explicitly provides for the Court to "retain jurisdiction . . . for purposes of enforcing the terms of th[e] Agreement" – such that the Court may "impose any and all appropriate remedies and sanctions, in law and equity, upon such non-complaint Party, including relief by way of mandatory injunction and sanctions for contempt." (*Id.*, Section 5.08). In connection with the parties' expedited dispute resolution mechanism (which provides for arbitration of any issues relating to ongoing demolition and remediation efforts), the Settlement Agreement also provides for the Court's review of the arbitrator's determinations upon request of the parties. (*Id.*; *see also id.*, Sections 5.04, 5.07, 5.08).

---

[1] Solely to facilitate settlement of this case, the Port District has agreed to undertake the Demolition Project and to act as "lead agency" for purposes of any environmental review required for the project under the California Environmental Quality Act ("CEQA"). The Airport Authority, which currently holds a long-term lease to the Site, has represented and hereby confirms that it has no current or reasonably foreseeable future plans or specific development projects for the Site; accordingly, any environmental review conducted for the Demolition Project is expected to address only those environmental impacts (if any) strictly associated with the Port District's Site demolition activities.

-4-

Case No. 03 CV 1146-B (POR)   NOTICE OF MOTION AND MOT. FOR APPROVAL OF SETTLEMENT; MEM. OF POINTS AND AUTHORITIES

## III. LEGAL ARGUMENT

### A. Federal Law Supports Judicial Approval of the Settlement And Contribution Protection For The Parties To The Agreement.

Although RCRA and CERCLA do not expressly provide contribution protection to settling defendants, federal courts have long recognized settling defendants' common law right to protection against contribution and indemnity claims brought by non-settling parties under CERCLA and other laws. (*United States v. Conservation Chem. Co.*, 628 F.Supp. 391, 402 (W.D. Mo. 1985); *Comerica Bank-Detriot v. Allen Indus., Inc.*, 769 F.Supp. 1408, 1414 (E.D. Mich. 1991)). Release of the settling defendant is in keeping with "CERCLA's policy of encouraging settlements" (*Comerica Bank-Detroit,* 769 F.Supp. at 1414), especially in complex cases, such as this one, where the evidence necessary to assess liability of the parties is voluminous. (*Allied Corp. v. Acme Solvent Reclaiming, Inc.,* 771 F.Supp. 219. 223 (N.D. Ill. 1990)). The principles that have been established in these and other CERCLA cases are equally applicable to the settlement of private suits brought under RCRA.

Courts regularly evaluate settlements to ensure that they (i) have been negotiated in good faith; (ii) are reasonable and fair to non-settling parties; and (iii) are consistent with the goals of CERCLA. (*See, e.g., Conservation Chem. Co.*, 628 F.Supp. at 402; *Comerica Bank-Detroit,* 769 F.Supp. at 1414). In this case, both the Settlement Agreement and the Separate Settlement are the product of good faith, arm's length negotiations between and among the parties. The case was stayed for over a year to accommodate these negotiations, which were difficult and hard fought. They were facilitated by Timothy Gallagher, a professional mediator, initially through a formal mediation process and then in multiple follow-up sessions. The process culminated in several all-day settlement conferences before Judge Porter to overcome final obstacles.

The Settlement Agreement and Separate Settlement also reflect a reasonable compromise regarding the parties' alleged liabilities to one another. The case has settled less than 60 days before trial, following more than a year of extensive discovery and motion practice, including tens of thousands of pages of documents, a significant number of depositions, exchanges of expert reports, and summary judgment motions. The settlements follow a complete site characterization effort under the direction of the Regional Board and will result in a prompt remediation of the Site in a manner that is fair for everyone concerned.

Finally, the agreements clearly support the goals of CERCLA and RCRA. On its face, CERCLA promotes settlement as a means of allocating potentially responsible parties' ("PRP") financial resources to clean-up rather than to legal fees. (42 U.S.C. § 9613(f)(1)). Similar considerations may be taken into account under RCRA Section 7002. The Settlement Agreement and Separate Settlement support the goals of both statutes because they will enable the parties to avoid the significant legal expenses associated with trial in this matter and to re-direct those funds to remediation of the Site.

### B. The Parties Also Are Entitled to a Good Faith Determination Under California State Law.

Although federal common law does not necessarily require a judicial determination of good faith as a prerequisite to barring RCRA or CERCLA contribution claims (*see Comerica Bank-Detriot,* 769 F.Supp. at 1411), California law does require such a determination in order to bar current and future state law claims by third parties. (*See* Cal. Code Civ. Proc. § 877.6). While some courts have held that judicially approved settlements under federal common law may also bar related state law claims, it is important that the Court also determine that the settlement agreements here were made in good faith under California law.

The following considerations are relevant in determining whether a settlement has been reached in good faith, based on information available at the time of the settlement:

(i) a rough approximation of the plaintiff's (and cross- and counter-claimants') total recovery and the settlors' potential liability;

(ii) the amount paid in settlement;

1  (iii) the allocation of settlement proceeds among plaintiffs;

2  (iv) a recognition that the settler should pay less in settlement than he or she would if
3  found liable after a trial;

4  (v) the financial conditions and insurance policy limits of settling defendants (and cross-
5  and counter-defendants); and

6  (vi) the existence of collusion, fraud or tortious conduct aimed to injure the interests of
7  non-settling defendants. (*Tech-Bilt, Inc. v. Woodard Clyde & Assoc.,* 38 Cal.3d 488, 213
8  Cal.Rptr. 256, 263 (Cal. 1985). Under *Tech-Bilt,* a court will generally approve a settlement
9  unless it is so far "out of the ballpark" in relation to the above factors as to be inconsistent with
10 the equitable objectives of Section 877.6 (*Id.* at 499-500).

11 The settlement agreements presented here clearly pass this test. They divide and assign
12 responsibility for completion of (and payment for) Site demolition and remediation to the
13 standards required by the CAO. They are part of a global settlement, in the sense that all of the
14 parties in the case have participated in one and/or the other of the two parallel agreements
15 simultaneously submitted for approval by the Court. These two agreements resolve all
16 outstanding claims between the parties, and the parties are stipulating to the Court's certification
17 of the good faith nature of both agreements. Also, both agreements were reached with all
18 parties' full knowledge of the facts, after extensive discovery, substantial and arms' length
19 negotiations before a professional mediator and Judge Porter, and less than two months before
20 trial. Nothing in the negotiation even suggests the existence of collusion, fraud or tortious
21 conduct aimed to injure the interests of non-settling defendants.

22 For all of these reasons, the Court should find that the settlement agreements were made
23 in good faith, are reasonable, and are not "grossly disproportionate" to the terms a reasonable
24 person would estimate should be required to reach a global settlement in a case of this type.

25 **C.  The Court Should Retain Jurisdiction For Purposes of Enforcing The Terms of the Settlement Agreement.**
26

27 In addition to approving the Settlement Agreement and certifying the good faith of the
28 Settlement Agreement and Separate Agreement, the parties are also asking the Court, as part of

-7-

Case No. 03 CV 1146-B (POR)         NOTICE OF MOTION AND MOT. FOR APPROVAL
                                    OF SETTLEMENT; MEM. OF POINTS AND AUTHORITIES

its approval/good faith order, to retain jurisdiction to the extent necessary to implement and enforce the terms of the Settlement Agreement between and among the Port District, the Airport Authority and the Defendants. Retained jurisdiction would allow judicial review of any arbitration resolving a dispute between the parties over the Demolition or Remediation Projects (as defined in the Settlement Agreement). It also would allow for the imposition of broad remedies against any party that fails to comply with the terms of the Agreement, including relief by way of mandatory injunction and sanctions for contempt. (Settlement Agreement, §§ 5.04, 5.07, 5.08, 5.09, 5.10). Dismissals with prejudice would be entered once the Regional Board issues a No Further Action letter for the Site. (*Id.*, § 5.09).

These are relatively standard provisions in these types of cases and are critical to the Settlement Agreement's success. They do not require the Court's active supervision or oversight of the demolition or remediation efforts, nor would they otherwise impose any significant burden on the Court. This type of retained jurisdiction is far less than what would be involved if the Court were to ultimately issue formal injunctive relief. (*Compare, e.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994) (retention of jurisdiction to enforce agreement) *with Interfaith Community Org. v. Honeywell Int'l, Inc.,* 2003 U.S. Dist. LEXIS 8898 (D.N.J. May 15, 2003), *aff'd,* 399 F.3d 248 (3d Cir. 2005) (RCRA injunctive relief)).

## IV. CONCLUSION

For all of the foregoing reasons, the parties respectfully request that the Court approve the Settlement Agreement between and among the Port District, the Airport Authority, and the Defendants, retain jurisdiction to enforce its terms, determine that both the Settlement Agreement and the Separate Agreement are in good faith, and enter an order barring all pending and/or future third party claims for contribution, indemnity or similar relief, by any person or entity not a party to the Settlement Agreement or the Separate Settlement, against the Port, the Airport Authority, Defendants, and General Dynamics.

Dated: March 28, 2007

KEVIN T. HAROFF
MATTHEW G. ADAMS
**SONNENSCHEIN NATH & ROSENTHAL LLP**


By  */s/ Kevin T. Haroff*
         Kevin T. Haroff

Attorneys for Plaintiff
San Diego Unified Port District


DATED: March 28, 2007

WARD L. BENSHOOF
MICHAEL J. HARTLEY
KYLE A. OSTERGARD
**WESTON, BENSHOOF, ROCHEFORT,
RUBALCAVA & MacCUISH LLP**


*/s/ Ward Benshoof / KTH*
         Ward L. Benshoof
Attorneys for Third-Party Defendant, Counterclaimant and Cross-Claimant SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | DATED: March 28, 2007 | J. DREW PAGE<br>**LATHAM & WATKINS LLP** |
| 4 | | |
| 5 | | _/s/ Drew Page / KTH_<br>J. Drew Page |
| 6 | | Attorneys for Third-Party Defendant<br>GENERAL DYNAMICS CORPORATION |
| 7 | | |
| 8 | DATED: March 28, 2007 | CHRISTOPHER BERKA<br>MARILEE J. ALLAN |
| 9 | | WARREN GEORGE<br>HOLLY PEARSON |
| 10 | | **BINGHAM MCCUTCHEN LLP** |
| 11 | | _/s/ Chris Berka / KTH_<br>Christopher Berka |
| 12 | | Attorneys for Defendant, Counterclaimant<br>and Third-Party Plaintiff TDY INDUSTRIES, INC. |
| 13 | | and Defendants RYAN AERONAUTICAL COMPANY;<br>TELEDYNE RYAN COMPANY; TELEDYNE RYAN |
| 14 | | AERONAUTICAL COMPANY; TELEDYNE<br>INDUSTRIES, INC.; ALLEGHENY TELEDYNE, INC.; |
| 15 | | ALLEGHENY TECHNOLOGIES, INCORPORATED<br>ERRONEOUSLY SUED AS ALLEGHENY |
| 16 | | TECHNOLOGIES, INC. |
| 17 | 27263547\V-4 | |

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Case No. 03 CV 1146-B (POR)

-10-

NOTICE OF MOTION AND MOT. FOR APPROVAL
OF SETTLEMENT; MEM. OF POINTS AND AUTHORITIES